IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:18MJ1212 |
|---|---|---|
| Plaintiff, | ) ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| v. | ) ) | |
| JAMES D. MITCHELL, | ) ) | MOTION TO ORDER TUBERCULOSIS TESTING |
| Defendant. | | |

Now comes the United States of America, by and through counsel, Justin E. Herdman, United States Attorney, and Christopher J. Joyce, Assistant United States Attorney, and hereby submits the following Motion to Order Tuberculosis Testing. This Motion is not being opposed by Counsel for the defendant.

The basis for the United States' Motion is stated more fully in the attached memorandum, which is incorporated herein by reference.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By:  /s/ Christopher J. Joyce
      Christopher J. Joyce (OH: 0086576)
      Assistant United States Attorney
      208 Seiberling Federal Courthouse
      Two South Main Street
      Akron, OH 44308
      (330) 761-0521 FAX: (330) 375-5492
      Christopher.Joyce@usdoj.gov

## Memorandum in Support

### I. Procedural History.

Defendant, James D. Mitchell, was arrested pursuant to an Arrest Warrant issued on October 10, 2018, after it was alleged in a Criminal Complaint that he had made Interstate Communications of a Threat. During the defendant's initial appearance on October 12, 2018, this Court ordered that the defendant be referred for a competency evaluation pursuant to 18 U.S.C. § 4241.

It has come to the attention of the undersigned that the United States Marshal Service is required to determine whether or not the defendant has tuberculosis before he can be transported to the appropriate medical facility to undergo his competency evaluation. Determining whether the defendant has tuberculosis will ensure he receives appropriate medical treatment, and will ensure the safety of the transporting officers, as well as the staff and residents at the receiving facility.

Tuberculosis testing can include an injection into the skin of a patient, followed by examination of any reaction at or near the injection site. Testing can also include, an x-ray examination of the chest cavity of a patient. A determination as to the type and manner of testing is left to the discretion of the testing physician.

It is the position of the United States that ordering the forcible administration of tuberculosis testing in whatever manner most suitable to the testing physician will serve legitimate government and public interests in this case.

## II. Law and Argument.

### A. Both the Supreme Court and the Sixth Circuit Court have allowed the forcible administration of medication in circumstances in which a defendant refuses to voluntarily participate.

The United States Supreme Court has examined the issue of the involuntary administration of antipsychotic drugs to a mentally ill person in order to render a defendant competent to stand trial. *See Sell v. United States*, 539 U.S. 166 (2003) ("[t]he Fifth Amendment Due Process Clause permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests."). The Sixth Circuit Court of Appeals has also considered the involuntary administration of medicine for purposes of restoring competency. *See United States v. Grigsby*, 712 F.3d 964 (6th Cir. 2013) (The Court engaged in an analysis of the factors set forth in *Sell v. United States*, *supra*, that a Court must consider in order to determine whether a defendant should be forcibly medicated to be restored to competency.).

While the instant case is not directly on point with the above-cited case law, it is evident that a similar issue was contemplated by these Courts. *Sell* and *Grigsby* presented situations in which the Court ordered the forcible administration of medical intervention to a defendant suffering from a mental illness, who refused treatment that would have proven beneficial for both the defendant and the government. Here, the general concept is the same. The defendant, who has exhibited signs of mental illness, is refusing to allow himself to be tested for a

3

dangerous and infectious disease.  The defendant would benefit by tuberculosis testing.  If the defendant has tuberculosis, his health care while incarcerated must be tailored to his particular needs.  Additionally, after testing, the defendant will be able to be transported to the appropriate facility for his competency evaluation.

The government will also benefit by the defendant being tested.  Once tested, the defendant can be transported and ultimately evaluated for competency.  Additionally, the deputies from the United States Marshal Service who are responsible for the defendant's transportation will be able to take the necessary precautions for their own health and safety.  Finally, it is important that the facility to which the defendant is being transported is aware of any particular health care needs of the defendant so that they can adequately care for him, and protect other staff and residents.

While the instant situation is similar in many ways to the type of intrusion discussed in *Sells* and *Grigsby*, it is the position of the government that a tuberculosis test is less intrusive than the forcible administration of antipsychotic medications.  No aspect of the testing being discussed instantly will have an effect on the defendant's cognition, or mental state.  Additionally, there is no risk of an adverse effect on the defendant's health by virtue of a negative reaction to medication.  As a result of the lesser intrusion, there is less risk here of offending the defendant's fundamental constitutional right to liberty.

### B. Courts have examined the efficacy of involuntarily testing prison inmates for tuberculosis.

In *Hasenmeier-McCarthy v. Rose*, 986 F. Supp. 464 (S.D. Ohio 1998), the Court examined a civil claim made against an institution by an inmate who was forced to submit to tuberculosis testing.  The plaintiff claimed that the tests violated the First Amendment Free Exercise of Religion Clause and the Eighth Amendment prohibition against cruel and unusual

punishment. The court held that the testing was not in violation of the First Amendment because the institution had a legitimate penological interest in protecting inmates and staff from infectious diseases and that mandatory testing was a reasonable method of accomplishing such goals. *Id*. at 468. The Court also held that the Eighth Amendment was not violated by mandatory tuberculosis testing because it did not involve excessive force or create an inhumane condition. *Id*. 468-471.

In reaching its conclusion, the Court in *Hasenmeier-McCarthy* examined the rationale of prisons in imposing mandatory tuberculosis testing. The Court noted, "[i]t is beyond dispute that tuberculosis represents a public health threat to both inmates and prison personnel." *Id*. at 467. "The President of the National Commission on Correctional Health Care testified that tuberculosis is 500 percent more common in prisons than in the general population." *Id*. "Further, tuberculosis, in addition to being highly infectious, can require years of treatment and in its most severe form can lead to death." *Id*.

Many Courts, in addition to *Hasenmeier-McCarthy*, have examined the forced administration of tuberculosis testing. See *Mack v. Campbell*, 948 F.2d 1289 (6th Cir. 1991) (the Sixth Circuit upheld the administrative punishment of an inmate who had refused to take a tuberculosis skin test because the tuberculosis screening program was reasonably related to the legitimate penological interest in preventing the spread of disease.); *Rhinehart v. Gomez*, No. 93-CV-3747, 1995 WL 364339, at *1 (N.D. Cal. June 8, 1995) (Inmate was physically compelled to submit to TB testing and the Court concluded that the State had a legitimate interest in conducting TB testing that outweighed plaintiff's interest.); *McCormick v. Stalder*, 105 F.3d 1059, 1062 (5th Cir. 1997) (the Court held that a prison could constitutionally force an inmate who had tested positive for TB to be medicated as part of the treatment of the condition.).

5

A review of the above case law, reveals that Courts have examined issues similar to the one before this Court.  Reviewing Courts have routinely held that the government's interests in preventing the spread of disease and ensuring proper healthcare for inmates outweighs the constitutional challenges that inmates have raised against the involuntary administration of tuberculosis testing.  In the instant case, the government has a legitimate interest in preventing the spread of disease and ensuring the proper care of the defendant.  In the event this Court were to order that the defendant undergo involuntary tuberculosis testing, such an order would not be in violation of the defendant's Constitutional Rights.

**III.	Conclusion.**

Wherefore, based on the foregoing, the United States respectfully requests that the this Honorable Court order that the defendant to undergo tuberculosis testing by whatever means are determined by the testing physician to be medically necessary.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/  Christopher J. Joyce
Christopher J. Joyce  (OH: 0086576)
Assistant United States Attorney
208 Seiberling Federal Courthouse
Two South Main Street
Akron, OH 44308
(330) 761-0521  FAX: (330) 375-5492
Christopher.Joyce@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November 2018, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Christopher J. Joyce
Christopher J. Joyce
Assistant U.S. Attorney